UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DUANE SPENCE,                    :    NO. 1:07-CV-00526
                                 :
         Plaintiff,              :
                                 :    **OPINION AND ORDER**
    v.                           :
                                 :
JOHN E. POTTER, Postmaster       :
General of the United States     :
Postal Service, et al.           :
                                 :
         Defendants.             :


        This matter is before the Court on Defendants' Motion for

Summary Judgment (doc. 12), Plaintiff's Response in Opposition

(doc. 21), and Defendants' Reply in Support (doc. 22).   For the

reasons indicated herein, the Court DENIES Defendants' Motion in

part and GRANTS Defendants' Motion in part.

**I.  Background**

        In this disability and age discrimination case, Plaintiff

Duane Spence, a sixty-three-year-old former postal worker, brings

claims against Defendants John Potter, Postmaster General, and the

United States of America (collectively "Defendants"), alleging he

was forced to quit his job because of age and disability

discrimination and retaliation (doc. 21).   Based on the events

giving rise to these claims, Spence also brings claims for

intentional infliction of emotional distress and negligent

supervision (Id.).

        The basic facts leading to the instant complaint are as

follows.  After beginning his career in North Carolina with the United States Postal Service in 1981, Spence transferred to Cincinnati's Bulk Mailing Center ("BMC") in 1990 to serve as a maintenance mechanic and later a second-shift mail processing equipment mechanic (doc. 12).  In mid-October of 2004, while clearing a jammed conveyer belt Spence felt a sharp pain in his neck, shoulder and arm (doc. 21).  Spence's pain went away almost immediately so he continued to work, but the symptoms became worse over the next few days (<u>Id</u>.).  On October 28, 2004, he awoke with severe pain, and he consulted his physician on November 2, 2004 (<u>Id</u>.).  Spence's doctor instructed him to take leave from work until further notice, and Spence communicated this information to Sharon Maggionalda, a Supervisor of Maintenance Operations, telling her that he was in pain but was unsure what happened (<u>Id</u>.).  After he had an MRI scan, Spence was diagnosed on November 8, 2004, with a herniated disc in his neck (<u>Id</u>.).  Spence then made the connection between the pain he experienced while clearing the jammed conveyer belt and the severe pain that led him to his doctor (<u>Id</u>.).  He contacted Maggionalda that same day to report the diagnosis (<u>Id</u>.).

Maggionalda mailed Spence workers' compensation forms on November 9, 2004, for him to complete (<u>Id</u>.).  On November 14, 2004, Gerald Adkins, another Supervisor of Maintenance Operations, called Spence to inform him he needed to come to the BMC to complete

2

various documents (<u>Id</u>.). Spence went to the BMC and completed the necessary forms to seek benefits for his work-related injury, and subsequently met with Dr. Ringer, a psychologist, on November 18, 2004 (<u>Id</u>.). At the appointment, Spence gave Dr. Ringer a CA-17 form indicating limited duty work was available at the Post Office; however, Dr. Ringer told Spence to engage in "no work" until his next appointment on December 16, 2004 (<u>Id</u>.). At that appointment, Dr. Ringer wrote a note indicating Spence was not to work for another two months, which Spence forwarded to Adkins (<u>Id</u>.).

Spence completed his prescribed physical therapy regimen in January 2005 and took a vacation to Las Vegas and Phoenix, hoping that the sun and heat would help his pain (<u>Id</u>.). Spence met with Dr. Ringer again on February 15, 2005, and was cleared to return to "light work" with a 20-pound lifting restriction (<u>Id</u>.). Spence returned to work on February 17, 2005 and was immediately called to a pre-disciplinary conference with Adkins, where he was told he was being investigated for fraud and filing a false workers' compensation claim (<u>Id</u>.). Following the conference, Spence was given light-duty work repairing carriages and was allegedly harassed repeatedly for his leave by Adkins and his fellow co-workers (<u>Id</u>.). On February 25, 2005, Spence had another pre-disciplinary interview with Adkins and was led to believe his actions were being followed closely by the Postal Inspector (<u>Id</u>.). Spence claims this knowledge led to a mental breakdown, and, as a result, Spence took time off work again to meet with both a

psychiatrist and a psychologist (Id.). Indeed, postal inspectors did conduct an investigation of Spence, including taking photographs and videos of him and talking with staff at his doctor's office, which investigation formed the basis for the proposed removal (doc. 12).

A notice of proposed removal was filed against Spence for allegedly not telling his doctor limited duty was available (doc. 21). Spence indicates he called Adkins to question the proposed removal, and Adkins allegedly responded by asking if Spence was retiring yet; in response, Spence's union filed a grievance over the proposed removal (Id.).

Spence received a formal termination letter on April 8, 2005 signed by Earl Briggs, the Manager of Maintenance Operations, which stated Spence was dishonest and failed to tell his doctor that limited duty work was available (Id.). However, the termination was reduced to a seven-day suspension upon review by the postal service (Id.). Spence was reinstated on April 16, 2005 and began filing a grievance against Adkins on April 21, 2005 (Id.). While Spence was filling out the grievance paperwork in the union office, a supervisor told him Briggs wanted him to leave the office immediately, and Spence states he developed chest pain as a result (Id.). After meeting with a cardiologist and the psychologist with whom he previously met, Spence was recommended a stress leave because of an impression that he was likely suffering anxiety attacks from a strained working environment (Id.).

On May 9, 2005, Spence visited an EEO counselor regarding these events, and a week later, Spence allegedly received a "letter of instruction" from Briggs telling him to notify his doctors of the availability of limited duty work (Id.). Spence also indicates postal inspectors went to his home without any prior notice during this time and that he felt constantly watched (Id.).

Spence was released to return to work from his stress leave on June 7, 2005, and returned to work on June 16, 2005, where he met with a manager responsible for coordinating limited and light duty work (Id.). This manager told Spence that he knew about his May 9 EEO meeting, that Spence was considered a problem employee and that he should keep a low profile (Id.). Finally on July 6, 2005, Spence was given a pre-disciplinary hearing by his new supervisor, Dan Howard, for failing to report a new work-related injury on time (Id.).

Spence decided he could not take the stress caused by the repeated hearings, harassment, and scrutiny anymore and retired effective July 31, 2005 (Id.). Spence then brought this instant four-count complaint on July 6, 2007, claiming (1) disability discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; (3) intentional infliction of emotional distress under the Federal Tort Claims Act ("FTCA"); and (4) negligent supervision also under the FTCA (doc. 1).

The matter is fully briefed and is ripe for the Court's consideration.

## II.  Law & Discussion

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [non-movant]."
Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781,
784 (6th Cir. 1994). Accordingly, the non-movant must present
"significant probative evidence" demonstrating that "there is [more
than] some metaphysical doubt as to the material facts" to survive
summary judgment and proceed to trial on the merits. Moore v.
Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see
also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page
numbers of the record in support of his claims or defenses, "the
designated portions of the record must be presented with enough
specificity that the district court can readily identify the facts
upon which the non-moving party relies." Guarino, 980 F.2d at 405,
quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th
Cir. 1989)(internal quotation marks omitted). In contrast, mere
conclusory allegations are patently insufficient to defeat a motion
for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d
1155, 1162 (6th Cir. 1990). The Court must view all submitted
evidence, facts, and reasonable inferences in a light most
favorable to the non-moving party. See Matsushita Elec. Indus. Co.
v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H.
Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,
369 U.S. 654 (1962). Furthermore, the district court may not weigh
evidence or assess the credibility of witnesses in deciding the
motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## A. Disability Discrimination in Violation of the Rehabilitation Act of 1973

In Count I of Plaintiff's Complaint, he claims that he was "discriminated against, harassed and retaliated against on account of his disability" and that Defendants failed to accommodate Plaintiff's disability by assigning him to do work beyond his restrictions and failing to provide him with an anti-fatigue mat upon his request, all in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791-96 (doc. 1).

The Rehabilitation Act prohibits qualified employers from discriminating against an employee "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Sixth Circuit requires that a plaintiff alleging disability discrimination show that the adverse employment action was taken solely because of a disability. Macy v. Hopkins Cty. Sch. Bd. of Educ., 484 F.3d 357, 363 n.6 (6th Cir. 2007)(collecting cases re same and reaffirming Sixth Circuit's

requirement).[1]

Plaintiff attempts to meet this burden by asserting that Defendants discriminated against him by harassing him, firing him and then rescinding that decision and putting him on suspension, threatening to fire him again, and failing to accommodate his request for an anti-fatigue mat and lighter weight restrictions, all of which combined to create a work environment so inhospitable that Plaintiff was forced to resign in order to prevent further emotional distress (docs. 1 and 21).

Absent direct evidence of discrimination, as here, the Court applies the three-step burden-shifting McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248 (1981). The initial burden, therefore, falls on Plaintiff to establish his prima facie case of discrimination. If he succeeds in doing this, the burden of production then shifts to Defendants to articulate a legitimate, non-discriminatory reason for the challenged employment action, which, in the third McDonnell Douglas step, Plaintiff must rebut as pretext. See Burdine 450 U.S. at 253; Macy, 484 F.3d at 364. To survive summary judgment, Plaintiff must proffer evidence sufficient to create a genuine issue of

---

[1] Claims brought under the Rehabilitation Act are analyzed as are those brought under the Americans with Disabilities Act of 1990. Doe v. Salvation Army in United States, 531 F.3d 355, 357 (6th Cir. 2008); Andrews v. Ohio, 104 F.3d 803, 807 (6th Cir. 1997); 29 U.S.C. § 794(d).

material fact at each stage of the McDonnell Douglas inquiry. Jones v. Potter, 488 F.3d 397, 404 (6th Cir. Ohio 2007).

To establish a prima facie case of disability-based discrimination under the Rehabilitation Act, Plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the job requirements with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) his employer knew or had reason to know of his disability; and (5) following the adverse employment action, either he was replaced by a non-disabled person or his position remained open or, in the alternative, he was treated differently than similarly-situated employees. Jones, 488 F.3d at 404.

The only factor upon which the parties appear to agree is that Plaintiff was otherwise qualified to perform the job, although neither side explicitly addresses this prong. The remaining four factors are expressly contested. Defendant argues that Plaintiff's herniated disc is not a "'long-term' physical impediment that substantially limited major life activity" and he is therefore not disabled as contemplated by the Rehabilitation Act; that his choice to retire from the Postal Service does not constitute an adverse employment action; that Plaintiff's "disability" was neither known nor should have been known by the decision-maker; and that Plaintiff has not presented evidence of a comparator employee or otherwise presented evidence tending to indicate that the harassment and other conduct Plaintiff allegedly suffered was

solely motivated by disability animus (doc. 12). Plaintiff argues that his herniated disc is a disability under the law and that, in addition, he had a record of impairment because from "early November of 2004 until February 17, 2005, he had an impairment that substantially limited his ability to sit, sleep, lift and work" (doc. 21). Additionally, Plaintiff contends that because Adkins, Maggionalda, Briggs and others knew of Plaintiff's injury and weight restrictions they knew or had reason to know he was disabled (Id.). Finally, Plaintiff argues that he need not produce comparator employees because the evidence of animus is so overwhelming. (Id., citing Birch v. Cuyahoga County Probate Court et al., 392 F.3d 151, 166 (6th Cir. 2004).)

### a. Plaintiff's Disability

To be considered disabled under the Rehabilitation Act, an individual must (1) have a physical or mental impairment that "substantially limits" him in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded as having such an impairment. DiCarlo v. Potter, 358 F.3d 408, 418 (6th Cir. 2004) (quoting Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002), citing to 29 U.S.C. § 705(20)(B) (Rehabilitation Act definition) and 42 U.S.C. § 12102(2) (ADA definition)). "Substantially limits" means that an individual is either unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which an individual can

12

perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. See 29 C.F.R. § 1630.2(j)(1); Penny v. United Parcel Serv., 128 F.3d 408, 414 (6th Cir. 1997).

Defendants argue that Plaintiff is not disabled as contemplated by the Rehabilitation Act because any limitations resulting from Plaintiff's herniated disc were not substantial and that the impairment itself was only temporary, not the permanent, long-term disability contemplated by the Act (doc. 12). In response, Plaintiff contends that he was substantially limited in the activities of lifting, sitting, sleeping and working (doc. 21). In addition, while his impairment lasted only four months, Plaintiff argues that this does not mean he did not have a disability because, Plaintiff contends, evaluation of the permanence of his disability should be made as of the time of the impairment and, during those four months no one knew that the impairment would not be permanent (Id.).

Plaintiff has offered no support for his proposal that the evaluation of the permanence of his disability should occur from the vantage point of what was known at the time, and the Court is unable to find any such support.[2] On the contrary, the case law

---

[2] The case law provided by Plaintiff is inapposite, as, among other reasons, none involves disparate treatment on the basis of disability: Bruno v. W.B. Sanders, 882 F.2d 760 (3d Cir. 1989)(age); Rice v. Gates Rubber Co., 521 F.2d 782 (6th Cir.

overwhelmingly requires that, for an individual to fall within the scope of the Rehabilitation Act, he must have a permanent, long-term impairment. <u>See</u>, <u>e.g.</u>, <u>Agnew v. Heat Treating Servs. of Am.</u>, 2005 WL 3440432, at *4 (6th Cir. Dec. 14, 2005) (noting that temporary physical conditions, even those that may possibly recur, do not generally constitute substantial impairments and finding that plaintiff's bad back, alone, does not qualify him for disability status); <u>Plant v. Morton Int'l, Inc.</u>, 212 F.3d 929, 938 (6th Cir. 2000)(same); <u>Roig v. Miami Fed. Credit Union</u>, 353 F.Supp. 2d 1213, 1216 (S.D. Fla. 2005) ("Substantially limits is a severe standard and must include permanent or long-term restrictions on performance of the life activity.")(citing <u>Toyota Motor Mfg. Ky. Inc. v. Williams</u>, 534 U.S. 184, 198 (2002)). <u>See also</u> <u>Colwell v. Suffolk County Police Dept.</u>, 158 F.3d 635, 646 (2d Cir. 1998)(a seven-month impairment of ability to work is of too short a duration to be substantially limiting); <u>Sanders v. Arneson Products</u>, 91 F.3d 1351, 1354 (9th Cir. 1996) (holding that three and one-half month impairment with minimal residual effects was not substantially limiting); <u>Halperin v. Abacus Technology Corp.</u>, 128 F.3d 191, 200 (4th Cir. 1997)(two month impairment not substantially limiting)(abrogated on other grounds by <u>Baird ex rel.</u>

---

1975)(race); <u>International Broth. of Teamsters v. United States</u>, 431 U.S. 324 (1977)(race and nationality). Consequently, none addresses Plaintiff's contention that disability claims, despite the "substantially limiting" requirement, should be assessed on the basis of what could have been assumed at the time of injury.

<u>Baird v. Rose</u>, 192 F.3d 462 (4th Cir. 1999)); 29 C.F.R. Pt. 1630 App., § 1630.2(j) (noting that "temporary, non-chronic impairments of short duration, with little or no long term permanent impact, are usually not disabilities").

It is the requirement that his impairment be substantially limiting to one or more major life activity that is fatal to Plaintiff's claim. Simply put, merely having an impairment or medical diagnosis does not make a plaintiff disabled under the law. <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 195 (2002); <u>MX Group, Inc. v. City of Covington</u>, 293 F.3d 326, 337 (6th Cir. 2002). Plaintiff must also produce evidence creating a genuine issue of material fact regarding whether his impairment substantially limits a major life activity. <u>See</u> <u>id</u>. This, he has not done. On the contrary, Plaintiff himself notes that his herniated disc and any concomitant limitations lasted less than four months and, as noted above, the fact that Plaintiff's impairment lasted less than four months belies a contention that it substantially limited any major life activity.

Nor does putting aside the lack of permanence cure the defects in Plaintiff's claim. The evidence offered by Plaintiff regarding the effect of his herniated disc on his life activities includes Plaintiff's affidavit stating that his ability to sleep was "severely impacted due to pain and discomfort," that his "ability to sit in a straight chair was also severely restricted," and that his ability to lift was restricted to items weighing less

than twenty pounds (doc. 21). In addition, Plaintiff has submitted notes from his treating physician recommending that Plaintiff not work for at least two months, which Plaintiff contends is evidence of him being substantially limited in his ability to work because, Plaintiff reasons, since his doctor recommended that he not work he was restricted from a broad class of jobs. (Id., citing Wysong v. Dow Chemical Co., 503 F.3d 441, 451 (6th Cir. 2007)).

This evidence simply does not create a genuine issue regarding whether Plaintiff is substantially limited in one or more major life activity. At best, it shows that at various points during those few months when his disc was herniated he experienced symptoms that interrupted his sleep patterns and necessitated that he take some time off from that particular job and limit his lifting. This is insufficient to defeat summary judgment. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999)(where plaintiff has not shown that he is substantially limited in his ability to perform a major life activity, but, at best, has shown he has an injury that, at times, limits his ability to perform major life activities such as walking or performing manual tasks, he is not "disabled"); Cotter v. Ajilon Servs., Inc., 287 F.3d 593, 598 (6th Cir. 2002) ("As we have held, '[a] single conclusory statement about an alleged substantial limitation is not enough to avoid summary judgment sought by the employer.").

On this record, the Court finds that no reasonable jury

could find that Plaintiff is substantially limited in his ability to work, because he has produced no evidence at all that he was at any point precluded from working in a broad class of jobs, only that his doctor recommended that he not return to his particular job while he underwent physical therapy. See Sutton, 527 U.S. at 491-92 (at a minimum, plaintiff must allege he is unable to work in a broad class of jobs; he must be precluded from more than one type of job, a specialized job, or a particular job of choice). To determine if Plaintiff is precluded from a substantial class or broad range of jobs, the Court compares his access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in Plaintiff's geographic vicinity. Mahon, 295 F.3d at 591. Plaintiff presented no evidence from which the Court could begin to make such a comparison. The record is even more devoid of evidence with respect to sitting, lifting and sleeping, as Plaintiff relies solely on his affidavit. This does not rise to the required level of "significant probative evidence." See Moore, 8 F.3d 335; McDonald, 898 F .2d 1155. See also Amann v. Potter, 105 Fed. Appx. 802, 807 (6th Cir. 2004)(plaintiff's claim that she has trouble performing some tasks and that others can cause pain does not demonstrate that she is severely restricted in those tasks compared to average person in the general population). Absent evidence that his herniated disc substantially limited a major life activity,

17

Plaintiff cannot show he is disabled under the Rehabilitation Act.

For similar reasons, Plaintiff's claim that he had a record of disability fails. The purpose of the "record" prong of disability law is, in part, to "ensure that people are not discriminated against because of a history of disability." 29 C.F.R. pt. 1630 App., § 1630.2(k). The "record of" component is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. See Colwell v. Suffolk Cty. Police Dept., 158 F.3d 635 (2d Cir. 1998) (citation omitted). First, it is hard to imagine that Congress contemplated someone whose impairment lasted less than four months when it was concerned with those with a "history of disability." Second, Plaintiff's record of impairment, to the extent one exists, shows no greater degree of limitation of major life activities than that presented for his disability claim, so it fails for the same reason. See id. at 645; Adams v. Rice, 531 F.3d 936 (D.C. Cir. 2008)(record of impairment without record of resulting substantial limitation insufficient for "record of" component of the Rehabilitation Act).

On this record, Plaintiff simply does not fall within the ambit of the Rehabilitation Act. Put another way, Plaintiff has failed to adduce evidence such that a genuine issue of material

fact exists regarding whether or not Plaintiff is disabled or that he had a record of disability under the Rehabilitation Act.

### b. Failure to Accommodate

For the same reason, Plaintiff's claim regarding Defendants' failure to accommodate his disability fails.

In order for a plaintiff to prevail on a claim of disability discrimination based on failure to accommodate, Plaintiff had to show that: (1) he is an individual with a disability; (2) he is qualified for the position; (3) the agency was aware of his disability; (4) an accommodation was needed because a causal relationship existed between the plaintiff's disability and his request for accommodation; and (5) the agency did not provide the necessary accommodation. <u>DiCarlo v. Potter</u>, 358 F.3d 408, 419 (6th Cir. 2004).

As discussed above, Plaintiff has failed to show that he is disabled under the Act; consequently, he cannot show that Defendants failed to accommodate him.

### c.   Harassment

Plaintiff does not make a discrete hostile-work-environment claim in his Complaint but, instead, uses the term "harassment" in Count 1 of the Complaint, his disability discrimination claim (doc. 1). Based on the briefing, the Court construes this to be a claim that Defendants created a hostile work environment.

The standard for a hostile work environment claim under the Rehabilitation Act is borrowed from the ADA. Plautz v. Potter, 156 Fed. Appx. 812 (6th Cir. 2005). A plaintiff is thus required to demonstrate five elements: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) defendant either knew or should have known about the harassment and failed to take corrective measures. Id. at 818, citing Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834 (6th Cir. 1996) (holding that the elements of a hostile work environment claim are the same across discrimination contexts and applying those elements specifically to the Age Discrimination in Employment Act).

The Plaintiff having failed to establish that he is disabled under the law, his hostile work environment/harassment claim likewise fails. See Reid v. Runyon, 34 Fed. Appx. 469, 471 (6th Cir. 2002)("Absent a disability, [plaintiff] cannot prevail on his hostile work environment claim.").[3]

---

[3] The Court observes that Plaintiff does not address the elements required of a hostile work environment claim but, instead, contends that the only requirement is that the plaintiff show that the harassment was "sufficiently severe or pervasive to alter the conditions of the employment and cause an abusive working environment" (doc. 21, citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). This is not an element of the claim but, instead, is used by the Supreme Court to illustrate the difference between a hostile work environment under the law and harassment that does not rise to that level. The actual elements of the charge are as set forth above.

### d. Retaliation

As with his hostile work environment claim, Plaintiff does not make a discrete retaliation-based claim in his Complaint but, instead, uses the term in Count 1 of the Complaint, his disability discrimination claim (doc. 1).

The Rehabilitation Act prohibits an employer from retaliating against an employee for engaging in a statutorily protected activity. Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001). A plaintiff "need not show that she is under a 'disability' to maintain a claim under the Rehabilitation Act based on the theory that her employer retaliated against her because she engaged in legally protected activities." Ferrero v. Henderson, 341 F.Supp.2d 873, 887 (S.D. Ohio 2004) (citing Davis v. Flexman, 109 F.Supp.2d 776, 801-02 (S.D. Ohio 1999) and Barrett v. Lucent Technologies, Inc., 36 F.Appx. 835, 840 (6th Cir. 2002)). Plaintiff relies on circumstantial, rather than direct, evidence of retaliation; therefore, the McDonnell Douglas framework applies. Gribcheck, 245 F.3d at 550 (citing McDonnell Douglas Corp., 411 U.S. at 802; Burdine, 450 U.S. at 253).

A prima facie case of retaliation has four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are

causally connected. <u>Wrenn v. Gould</u>, 808 F.2d 493, 500 (6th Cir. 1987).

Plaintiff contends that the legally protected activity in which he engaged and for which Defendants retaliated against him was a May 9, 2005, visit with an EEO counselor at the Post Office, whom he consulted for informal counseling (doc. 21). He further contends that the following constitute adverse employment actions: on May 16, 2005, he received a prohibited letter of instruction from Briggs that notified Plaintiff that the Postal Service has limited duty work available and that it was Plaintiff's responsibility to notify his physician accordingly; on June 16, 2005, the coordinator of limited and light duty work told Plaintiff he knew that Plaintiff had gone to the EEO office, that Plaintiff was considered a problem employee, and that Plaintiff should keep a low profile; on July 6, 2005, Plaintiff was called to a pre-disciplinary hearing with his new supervisor because of his alleged failure to immediately report a work-related injury that had occurred on June 26, 2005; and Plaintiff was constructively discharged (<u>Id</u>.). Further, Plaintiff argues that the temporal proximity between his May 9 visit to the EEO counselor and the adverse actions satisfies the causal connection requirement (<u>Id</u>.).

Defendants first argue that any retaliation claim is barred because Plaintiff failed to exhaust his administrative remedies (doc. 22). Next, Defendants argue that none of the events

presented by Plaintiff as evidence of adverse action were, in fact, adverse or retaliatory and, as a result, Plaintiff has failed to establish that a genuine issue of fact exists regarding his retaliation claim (Id.).

## 1. No failure to exhaust

Prior to bringing suit under the Rehabilitation Act, a plaintiff must first exhaust his administrative remedies. Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991). Here, the Court notes that Plaintiff filed two grievances with the EEO. The first, dated July 19, 2005, alleged discrimination based on age, physical disability and retaliation when Plaintiff was issued the Notice of Proposed Removal on March 4, 2005, and a Letter of Decision-Removal on April 8, 2005, which, after grievance, was reduced to a seven-day time off without pay on April 15, 2005 (doc. 12). Notably, this first complaint explicitly did not include a retaliation claim based on prior EEO activity (Id.). There is no dispute that Plaintiff exhausted the administrative remedies with respect to this first complaint. The second EEO complaint was filed on January 19, 2006 and alleged discrimination based on retaliation for a prior EEO activity when Plaintiff felt compelled to retire effective July 31, 2005 (doc. 22). This complaint was dismissed as untimely filed by the EEO (Id.). Defendants argue that because this retaliation-based complaint was untimely filed, Plaintiff did not exhaust his administrative remedies and, therefore, any

retaliation claim is barred (Id.). Plaintiff contends that the current claim of retaliation based on his May 9, 2005 meeting with the EEO counselor flows from the events of the original complaint, and therefore he was not required to file the second EEO complaint (Id.). Further, Plaintiff contends, because the current claim is encompassed by the original complaint, he has exhausted the administrative remedies (doc. 21, citing Ang v. Procter & Gamble Co., 932 F.2d 540 (6th Cir. 1991)).

Ang v. Procter & Gamble, Co. does note that it is not necessary to exhaust administrative remedies when a retaliation claim grows out of an earlier charge. 932 F.2d at 546. The rationale for this, as the Ang court stated, is that retaliation claims, by definition, arise after engaging in the protected activity so requiring only the one filing promotes efficiency. Id. at 547. Here, it is hard to see how Plaintiff promoted efficiency by not explicitly including in his first EEO complaint the conduct he now complains of, when all but the alleged constructive discharge occurred months before he filed the complaint. However, Plaintiff did allege retaliation in his original complaint and the EEO discussed the May 9, 2005, counseling sought by Plaintiff in its decision on the first complaint (doc. 12). The Court finds that the conduct Plaintiff complains of in the instant case could be reasonably expected to grow out of the issues presented and exhausted with Plaintiff's original EEO complaint. See Duggins v.

<u>Steak 'N Shake, Inc.</u>, 195 F.3d 828, 831 (6th Cir. 1999)(noting that courts should refuse to narrowly construe charges brought under remedial statutes when to do so would preclude a plaintiff from bringing a claim and further noting that a judicial complaint need not be "tied to the four corners" of the EEO form complaint). Therefore, the Court finds that Plaintiff's retaliation claim is not procedurally barred by a failure to exhaust administrative remedies.

## 2.    Retaliation

Neither side addressed the issue of whether informal counseling with an on-site EEO counselor is a legally protected activity, and the Court assumes, without deciding, that it is. Defendants do not contest that they knew that Plaintiff met with the counselor, and the Court finds this prong met.  The Court now turns to the remaining two elements, the adverse employment action and its causal connection to the protected activity.  <u>See</u>  <u>Wrenn</u>, 808 F.2d at 500.

Regarding the adverse employment action prong, the Court finds first that the receipt of the letter of instruction does not rise to the level of an adverse employment action.  To establish an adverse employment action in a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting

a charge of discrimination." <u>Burlington Northern and Santa Fe Ry.</u> <u>Co. v. White</u>, 548 U.S. 53, 68 (2006). The letter of instruction received by Plaintiff does indeed appear to have been a form letter that was discontinued many years prior by the Postal Service. However, such a clerical error cannot reasonably be seen to dissuade someone from making or supporting a charge of discrimination. To the extent there is a connection between those two at all, a connection that eludes the Court, it is far too attenuated to be sufficient to defeat summary judgment.

However, given that the burden of establishing a <u>prima</u> <u>facie</u> case of retaliation is not an onerous one, <u>Nguyen v. City of</u> <u>Cleveland</u>, 229 F.3d 559, 563 (6th Cir. 2000), the Court finds that the statement that Plaintiff should keep a low profile and the notification of the pre-disciplinary hearing, under the circumstances of this case, could dissuade a reasonable employee from making a charge of discrimination. Although it is true that the manager making the statement was not Plaintiff's supervisor, as Defendants note, that does not lessen the potential impact of his statement. To hear from someone in management that it was known that one had visited the EEO office, that one's reputation is that of a problem employee and that one should just keep a low profile and get on with one's life, while not an explicit threat as Defendants correctly note, could very well dissuade a reasonable person from pursuing discrimination charges. The same is true for

the pre-disciplinary hearing. Defendants dispense with this by pointing out that Plaintiff left the Postal Service before any actual hearing could be held and, therefore, before any discipline could result from the calling of the pre-disciplinary hearing (doc. 22). However, this misses the point. The analysis is not whether Plaintiff was actually disciplined but, instead, whether the calling of the pre-disciplinary hearing for those reasons and under those circumstances would dissuade a reasonable employee from engaging in statutorily protected activity.

In addition, Plaintiff alleges that he was constructively discharged which, if established, would certainly qualify as an adverse employment action (doc. 21). See Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 886 (6th Cir. 1996).

In order to state an actionable claim for constructive discharge, Plaintiff must show (i) that a reasonable person in Plaintiff's position would have felt compelled to resign and (ii) that Defendants either intended to cause or should reasonably have foreseen Plaintiff's resignation in light of Defendants' deliberate conduct. Logan v. Denny's, Inc., 259 F.3d 558, 568 (6th Cir. 2001); Kocsis, 97 F.3d 876.

Plaintiff does not specifically address the issue of Defendants' intent but, instead, appears to offer "the events that gave rise to his informal and formal EEO complaints" as evidence of

Defendants' intent (<u>Id</u>.).[4]  In addition, Plaintiff points to Briggs' having sent the improper letter of instruction, the manager's statement that Plaintiff was considered a problem employee, the fact that Briggs, who had originally fired Plaintiff (which firing was later reduced to the seven-day suspension), was still the Manager of Maintenance Operations, and the notification of the pre-disciplinary hearing as evidence of Defendants' intention to cause Plaintiff to resign (<u>Id</u>.).  Plaintiff contends that after the notification of the pre-disciplinary hearing, he "reasonably determined that the pattern of harassment that started with Adkins was not going to stop" (<u>Id</u>.).

The Courts note that Plaintiff has offered no evidence of Defendants' intent.  Instead, Plaintiff has offered his interpretation of Defendants' actions, but this is not evidence. <u>LaPointe v. United Autoworkers Local 600</u>, 8 F.3d 376, 382 (6th Cir. 1993)("Feelings of the employee alone cannot establish a constructive discharge; 'the constructive discharge issue depends upon the facts of each case and requires an inquiry into the intent

---

    [4]  The Court assumes this includes the disparaging comments made by Adkins; the investigation undertaken by the postal service into whether his November 2004 injury was legitimate; the form letter of instruction, which Plaintiff interpreted as containing an implied threat of disciplinary action; the fact that he was told to go back out on the floor when he was filling out his union grievance papers, which he likewise interpreted as harassment; and the removal of pieces of cardboard that had previously provided his workstation with some privacy, which Plaintiff interpreted as being done "apparently so he could be watched" (doc. 21).

of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'). Nor has Plaintiff offered evidence creating a genuine issue as to whether Defendants should have reasonably foreseen that Plaintiff would resign under the circumstances.

The Court further finds that Plaintiff has not succeeded in establishing that Defendants' actions, regardless of intent, rose to the level of intolerable to a reasonable person. The Sixth Circuit has found constructive discharge when an employee reasonably believed his termination or demotion was imminent, Ford v. Gen. Motors Corp., 305 F.3d 545, 554 (6th Cir. 2002) (termination), Saroli v. Automation and Modular Components, Inc., 405 F.3d 446, 452 (6th Cir. 2005)(demotion), and when the employer isolated the employee by instructing other employees not to talk or interact with him, Moore v. KUKA Welding Sys. and Robot Corp., 171 F.3d 1073, 1080-81 (6th Cir. 1999). On the other hand, the manner in which an employer criticizes an employee's job performance, such as following rules, has been found insufficient to establish constructive discharge. See, e.g., Smith v. Henderson, 376 F.3d 529, 534 (6th Cir. 2004); Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002)(discussing cases and finding no constructive discharge where employee contended he was unfairly criticized and placed on performance improvement plan); Caslin v. Gen. Elec. Co., 696 F.2d 45, 47 (6th Cir. 1982) (same); Bielert v. Northern Ohio

Properties, 863 F.2d 47 (6th Cir. 1988)("An employer does not constructively discharge an employee simply by advising him that he must be productive in order to retain his new job."). On the spectrum, Plaintiff's case clearly falls on the job performance end, as there is no evidence other than Plaintiff's fears that his termination or demotion was imminent. Such fears are insufficient to defeat summary judgment. See Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 515 (6th Cir. 1991)(the employee has "an obligation not to assume the worst, and not to jump to conclusions too fast").

Although the Court finds that Plaintiff has not succeeded in establishing that he was constructively discharged, the Court has found that Plaintiff succeeded in creating a genuine issue as to whether he suffered an adverse employment action with the statement that he is a problem employee who should keep a low profile and the notification of the pre-disciplinary hearing. The inquiry regarding retaliation does not end there, however. The final prong of the prima facie case that Plaintiff must demonstrate is that there was a causal connection between his counseling session with the EEO counselor on May 9 and the statement regarding him being a problem employee and/or the pre-disciplinary hearing and/or the constructive discharge. See Nguyen, 229 F.3d at 563.

Plaintiff is required to produce sufficient evidence to create an inference that the "adverse action would not have been

taken had the plaintiff not filed a discriminatory action." <u>Id</u>.

Causation can be inferred from circumstantial evidence, <u>id</u>., but to withstand summary judgment, causation must be shown by evidence "sufficient to raise the inference that protected activity was the likely reason for the adverse action," <u>Zanders v. Nat'l R.R. Passenger Corp.</u>, 898 F.2d 1127, 1135 (6th Cir. 1990) (internal quotes omitted).

Plaintiff argues that he has satisfied the causation element because of the temporal connection between the May 9 complaint and the reference by the light duty manager to Plaintiff's EEO activity (doc. 21). Plaintiff goes on to assert that "[i]t is generally accepted that an adverse action taken shortly after an employee engages in protected conduct supports an inference of retaliation" (<u>Id</u>., citing <u>Polk v. Yellow Freight Sys.</u>, 876 F.2d 527, 531 (6th Cir. 1987) and <u>Ratliff v. Wellington Exempted Village Schools Bd. of Educ.</u>, 820 F.2d 792, 796 (6th Cir. 1987)). Defendants do not specifically address this element of the <u>prima facie</u> case.

The Court notes that Plaintiff overstates the law regarding temporal connection and causality. It is, in fact, <u>not</u> generally accepted that a temporal connection supports an inference of retaliation; it may have been in 1987, but the Sixth Circuit has refined the law on this in the years since. <u>See</u>, <u>e.g.</u>, <u>Blume v. Potter</u>, 289 Fed.Appx. 99, 106 (6th Cir. 2008)(failure to present

any evidence of causality other than six-month period between protected activity and adverse action fatal to <u>prima</u> <u>facie</u> case). Absent some other corroboration, temporal proximity by itself is insufficient to establish the causality prong of the <u>prima</u> <u>facie</u> case of retaliation. <u>Nguyen</u>, 229 F.3d at 566 ("temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence").

Here, the offensive statement itself provides the causal corroboration. The light duty manager allegedly made a direct reference to the protected activity, saying that he knew that Plaintiff had gone to the EEO, that Plaintiff was considered a problem employee and that if he kept a low profile he should be fine (doc. 21). A rational jury could find that the statement itself, coupled with the fact that it was made on Plaintiff's first day back from medical leave, supports the inference of a causal connection between the protected activity and the adverse action. However, the same is not true for the notification of the pre-disciplinary hearing. Plaintiff has presented no evidence beyond the temporal connection between Plaintiff's May 9 EEO counseling and the July 6 notification from which a rational jury could conclude that the pre-disciplinary hearing notification was caused by animus regarding Plaintiff's EEO counseling session.[5]

---

[5]    The Court notes that even if Plaintiff had succeeded in establishing that he was constructively discharged, he would not have succeeded in making his <u>prima</u> <u>facie</u> case regarding

In sum, the Court finds that Plaintiff has succeeded in making his _prima_ _facie_ case only as to his claim that Defendants retaliated against him for seeking EEO counseling on May 9, 2005, when the light duty manager informed Plaintiff that it was known that he consulted with the EEO counselor, that Plaintiff was considered a problem employee, and that in order to succeed he should keep a low profile.

Under _McDonnell Douglas_, the burden shifts to Defendants to produce a legitimate nondiscriminatory reason for having engaged in that conduct, which Defendants have not done. Therefore, the Court need not reach Plaintiff's pretext argument. The Court therefore DENIES Defendants' Motion for Summary Judgment as to the retaliation claim only.

## B. Age Discrimination in Violation of the Age Discrimination in Employment Act

For the following reasons, the Court finds that, as to his age-discrimination claim, Plaintiff has not adduced evidence sufficient to raise a genuine issue of material fact that but for Plaintiff's age, Defendant would not have constructively discharged him.

The Age Discrimination in Employment Act of 1967 as amended ("ADEA") prohibits employers from discriminating "against

---

constructive discharge, as he has offered no evidence, beyond the temporal connection, that his resignation was caused by animus regarding his May 9 EEO counseling visit.

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Plaintiffs may use either direct or circumstantial evidence to prove unlawful discrimination but, as the United States Supreme Court recently held, regardless of the type of evidence presented, the burden of persuasion remains at all times with the plaintiff to demonstrate that "age was the 'but-for' cause of the challenged...action." <u>Gross v. FBL Financial Services, Inc.</u>, 129 S.Ct. 2343, 2352 (2009).

When a plaintiff presents no direct evidence of unlawful discrimination, in order to establish his <u>prima</u> <u>facie</u> case of age discrimination he must establish the four elements of the <u>McDonnell Douglas</u> test: 1) that he was a member of a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class. <u>Geiger v. Tower Automotive</u>, 579 F.3d 614, 622-3 (6th Cir. 2009), citing <u>Allen v. Highlands Hosp. Corp.</u>, 545 F.3d 387, 394 (6th Cir. 2008). <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 79 (1973). Should Plaintiff succeed in his <u>prima</u> <u>facie</u> showing, Defendants would then need to present a legitimate, nondiscriminatory reason for the adverse employment action, which Plaintiff would then need to rebut as pretextual. <u>See</u> <u>id</u>.

Plaintiff first argues that he need not make a <u>prima</u> <u>facie</u> showing because he has adduced direct evidence of age

discrimination: Adkins asking Plaintiff when he was going to retire (doc. 21). Defendants contest the assertion that this question constitutes direct evidence of age animus, argue that McDonnell Douglas should apply, and argue further that Plaintiff has failed to meet the prima facie showing (docs. 12 and 22).

Direct evidence of discrimination does render McDonnell Douglas inapplicable. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 119 (1985). However, Adkins's questions regarding Plaintiff retiring simply are not direct evidence. Direct evidence in the discrimination context is evidence that, if believed, requires the finding that unlawful discrimination was minimally a motivating factor in the adverse employment action. Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). On the other hand, circumstantial evidence requires that an inference of some kind be used to reach the conclusion that unlawful discrimination was a motivating factor. Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003).

Plaintiff cites to LaPointe v. UAW Local 600, 8 F.3d 376 (6th Cir. 1993) and encourages this Court to see Adkins's question about retirement the same as the decision-maker in LaPointe repeatedly saying, inter alia, that he was going to "get the older employees out," which the Sixth Circuit found to be direct evidence of discrimination (doc. 21). See LaPointe at 379. Defendants cite to Scott v. Potter, 182 Fed. Appx. 521 (6th Cir. 2006), where the

Sixth Circuit held that the statement "Why don't you retire and make everybody happy" did not constitute direct evidence of age discrimination (doc. 22). <u>See</u> <u>Scott</u> at 526. The Court finds the facts of the instant case to be more aligned with those in <u>Scott</u> than in <u>LaPointe</u> and is persuaded by the Sixth Circuit's rationale in <u>Scott</u>. The <u>Scott</u> court noted that "'years of service' is conceptually distinct from age..." and went on to observe that "younger workers typically do not 'retire' from an employer, while older workers typically do. Yet, it is this 'typicality' rather than 'identity' which requires that an inference be drawn before 'Why don't you retire' can become evidence of a discriminatory animus like 'Why don't you retire; you're too old.'" <u>Scott</u>, 182 Fed. Appx. at 526. Here, even accepting as true that Adkins asked Plaintiff on more than one occasion when he was going to retire, a jury would simply have to infer age animus as there are multiple ways to construe the motivations behind that question, and the finding of unlawful intent is not <u>required</u>.

Absent direct evidence, therefore, Plaintiff must succeed on a <u>prima</u> <u>facie</u> case. He has not. Two of the four elements of the <u>McDonnell Douglas</u> test are not contested: Plaintiff was over forty at the time of the adverse employment action, and he was qualified for his position. Plaintiff contends that he suffered an adverse employment action because his retirement was a constructive discharge (doc. 21). For the purposes of Plaintiff's <u>prima</u> <u>facie</u>

case of age discrimination, the Court does not need to decide whether he was constructively discharged, as his _prima_ _facie_ claim is fatally flawed: he has presented no evidence of similarly-situated comparators. Plaintiff argues that this is not necessary because <u>McDonnell Douglas</u> is "flexible" (doc. 21) and directs the Court to <u>Birch v. Cuyahoga County Probate Court et al.</u>, 392 F.3d 151, 166 (6th Cir. 2004). In <u>Birch</u>, a female magistrate complained, <u>inter</u> <u>alia</u>, that she was paid less than men because of her sex, and when she confronted her employer about it he allegedly responded that he did not have to hire women; that the female magistrates did not have to work at the court if they do not want to; and that he did not know how to make the salaries fair because he "rel[ied] on the men to do the important work of the Court." <u>Id</u>. at 165. The court held that the plaintiff's failure to produce a comparator was not fatal because "there [wa]s so much evidence of [the] decision-maker's discriminatory animus," and a comparator was not necessary to "eliminate the most common non-discriminatory reason" for the adverse employment action. <u>Birch</u>, 392 F.3d at 166-67.

<u>Birch</u> appears to be quite isolated in its approach, and the Sixth Circuit has unambiguously and repeatedly adopted and required the four <u>McDonnell Douglas</u> <u>prima</u> <u>facie</u> factors. <u>See</u>, <u>e.g.</u>, <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241 (6th Cir. 1995); <u>Grosjean v. First Energy Corp.</u>, 349 F.3d 332 (6th Cir.

2003); <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577 (6th Cir. 1992); <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605 (6th Cir. 2002). The Court, following this Sixth Circuit precedent, finds that, here, failure to come forth with similarly-situated comparators is fatal to Plaintiff's <u>prima facie</u> case of age discrimination. Even if the Court were to follow <u>Birch</u>'s rationale, the Court finds that Plaintiff has failed to offer evidence approaching the level of hostility that the <u>Birch</u> court found. In any event, Plaintiff has certainly not adduced evidence such that a reasonable jury would find that <u>but for</u> Plaintiff's age he would not have been constructively discharged. <u>See</u> <u>Gross</u>, 129 S.Ct. at 2353.

Plaintiff has failed to produce direct evidence of age discrimination; adequately make a <u>prima facie</u> showing on the basis of indirect evidence; and adduce sufficient evidence such that a reasonable jury would find age the but-for cause of Plaintiff's adverse employment action. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's age discrimination claim, count II of the Complaint.

### C. State Claims

Plaintiff brings two state tort claims against the United States under the Federal Tort Claims Act ("FTCA"): intentional infliction of emotional distress and negligent supervision. For the following reasons, the Court GRANTS Defendants' Motion for Summary Judgment as to the state tort claims, Counts III and IV of

the Complaint.

### 1.    Intentional Infliction of Emotional Distress

The FTCA provides a waiver of sovereign immunity for liability of a federal agency for personal injury caused by the negligent acts or omissions of a federal employee while acting within the scope of his office or employment under circumstances where the government, were it a private person, would be liable according to the law of the place where the tort occurred. 28 U.S.C. § 1346(b).  However, if a claim comes within the ambit of the Federal Employee Compensation Act ("FECA"), the exclusive remedy for work-related injuries sustained by federal employees, an action under the FTCA is barred.  See, e.g., McDaniel v. United States, 970 F.2d 194 (6th Cir. 1992).

Defendants argue that the Court should dismiss this claim because the only proper avenue for redress of Plaintiff's alleged mental or emotional pain is FECA (doc. 12).  In the alternative, Defendants argue that the conduct alleged by Plaintiff does not rise to the level of extreme and outrageous conduct as required by Ohio law (Id.).  Plaintiff urges this Court to view the FECA as inapplicable to a claim of intentional infliction of emotional distress or, at the very least, find a "substantial question" as to whether it is applicable and argues in the alternative that the pattern of harassment suffered by Plaintiff does rise to the level contemplated by Ohio law (doc. 21).

39

As a preliminary matter, it appears as though the question of whether purely psychological injuries (as contrasted with those derivative of physical injuries) fall within FECA's ambit is not definitively resolved in the Sixth Circuit. Compare DeFord v. Secretary of Labor, 700 F.2d 281, 290 (6th Cir. 1983)(stating in dictum that FECA does not apply to mental distress claims) with McDaniel, 970 F.2d at 197(recognizing Secretary's determination that such claims do fall within FECA's scope is binding on court). Where there is a "substantial question" regarding the applicability of FECA to a claim, a stay on the proceedings is the appropriate action. McDaniel, 970 F.2d at 198. Only if the Secretary of Labor decides that Plaintiff's emotional distress claim is fundamentally outside the scope of the FECA may his claim proceed in this Court because, until that point, the Court is without jurisdiction. See, e.g., Sw. Marine, Inc. v. Gizoni, 502 U.S. 81, 90 (1991)("[T]he courts have no jurisdiction over FTCA claims where the Secretary of Labor determines that FECA applies"); McDaniel, 970 f.2d at 198.

This Court held a conference on this matter in September, 2009, and counsel for Plaintiff was to supplement the record with information regarding the status of Plaintiff's appeal of the Secretary's denial of his claim. To date, the record has not been so supplemented, so the Court remains in the dark regarding the administrative resolution of the FECA issue. The Court sees three

40

possibilities: (i) the Secretary has decided that FECA applies, in which case her ruling on the matter is final and cannot be heard by this Court; (ii) the Secretary has not decided the issue yet, in which case a stay on the proceedings could be warranted; or (iii) the Secretary has decided that FECA does not apply to Plaintiff's emotional distress claim, which would allow the Court to decide the claim under the FTCA.

Rather than stay the issue and delay the resolution of this case further, the Court will assume only for this purpose that the Secretary has decided that FECA does not apply to Plaintiff's claim. Under Ohio law, a claim of intentional infliction of emotional distress requires proof of extreme and outrageous conduct of an intentional or reckless character that causes severe emotional distress. <u>Yeager v. Local Union 20</u>, 453 N.E.2d 666, 671 (Ohio 1983)(abrogated on other grounds by <u>Welling v. Weinfeld</u>, 866 N.E.2d 1051 (Ohio 2007)). To illustrate how high this bar is in Ohio, the Ohio Supreme Court endorsed this description from the Restatement (Second) of Torts:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of fact to an average member of the community would arouse his resentment

against the actor and lead him to exclaim, 'Outrageous!'.... <u>Reamsnyder v. Jaskolski</u>, 462 N.E.2d 392, 394 (Ohio 1984).

Even viewing the facts in the light most favorable to Plaintiff, and viewing them as a whole, the Court cannot find that the alleged conduct rises to the high level required by Ohio. Plaintiff points to the following, <u>inter</u> <u>alia</u>, as proof that Defendants intentionally inflicted emotional distress upon him: upon Plaintiff's return to work he was accused of fraud, which allegations were shared with co-workers who then "made comments to Plaintiff and treated him differently"; he was called a "piece of shit" and "useless" by his supervisor, Adkins; he was laughed at when he asked for an anti-fatigue mat as an accommodation; Plaintiff was told to leave the union office while he was filling out some grievance paperwork; postal inspectors went to his home while he was on leave; Briggs sent him a letter of instruction that was improper; and he was threatened with discipline that may have led to another termination (doc. 21). However, Plaintiff has not adduced evidence such that a genuine issue of material fact exists with respect to whether Defendants' conduct was "atrocious" and "utterly intolerable in a civilized society." Summary judgment on this claim is therefore appropriate. Assuming that the Court has jurisdiction over the claim, the Court GRANTS Defendants' Motion with respect to Plaintiff's intentional infliction of emotional distress claim.

## 2. Negligent Supervision

In Ohio, a claim for negligent supervision requires that there be an employment relationship; that the offending employee be incompetent; that the employer have actual or constructive knowledge of that incompetence; that the employee's act or omission caused the plaintiff's injuries; and that the employer's negligence in retaining the employee was the proximate cause of the plaintiff's injuries. Evans v. Ohio State Univ., 680 N.E.2d 161, 171 (Ohio 1996).

Plaintiff contends that Defendants were negligent in putting Adkins in a supervisory position because Adkins had previously pleaded guilty to conspiracy to distribute drugs, was convicted of marijuana possession, had previously had an EEOC action filed against him by a subordinate, and had been accused of sexual harassment by a co-worker (doc. 21). Defendants counter that Plaintiff has failed to establish that the Postal Service was aware of Adkins' incompetence and that the retention of Adkins proximately caused Plaintiff's injuries (doc. 22).

The Court finds well-taken Defendants' position. Plaintiff has simply failed to adduce evidence on each element of this tort such that a genuine issue of material fact exists regarding whether Defendants negligently supervised Adkins. Defendants very effectively deconstruct the "e-vidence" presented by Plaintiff as proof of Adkins' incompetence. But even accepting

those points as meaningful evidence, Plaintiff has utterly failed to present evidence of Defendants' knowledge and of the proximate cause element. Consequently, this claim cannot withstand Defendants' motion for summary judgment.

## III. Conclusion

For the foregoing reasons, the Court DENIES Defendants' Motion for Summary Judgment as to the retaliation component of Count I of the Complaint and GRANTS Defendants' Motion as to Counts II, III and IV of the Complaint, as well as all non-retaliation components of Count I. The Court further SETS this matter for a final pretrial conference on March 10, 2010 at 2:00 P.M. and a three-day jury trial to begin on April 13, 2010, at 9:30 A.M. on an on-deck basis.

SO ORDERED.

Dated: February 2, 2010      /s/ S. Arthur Spiegel
                                  S. Arthur Spiegel
                                  United States Senior District Judge